**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

CHICAGO TITLE INSURANCE COMPANY                   PLAINTIFF/
                                                  COUNTER-DEFENDANT

v.                          No. 4:07CV00554 JLH

                                                  DEFENDANT/
ARKANSAS RIVERVIEW DEVELOPMENT, LLC        COUNTER-CLAIMANT


**OPINION AND ORDER**

Chicago Title Insurance Company brought this action seeking a declaration of its rights and

obligations under an owner's title insurance policy issued to Arkansas Riverview Development,

LLC.  Chicago Title invoked jurisdiction pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332 as

Chicago Title is a Missouri Corporation, Arkansas Riverview Development is an Arkansas

Company, and the amount in controversy exceeds $75,000.  Arkansas Riverview Development filed

counterclaims against Chicago Title for breach of contract and negligence.  Chicago Title has moved

for summary judgment on Arkansas Riverview Development's claims for breach of contract and

negligence.  Arkansas Riverview Development has moved for partial summary judgment on its claim

for breach of contract.

**I.**

**THE SUMMARY JUDGMENT STANDARD**

A court should enter summary judgment if the evidence, viewed in the light most favorable

to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986);

*Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.

## II.

### THE UNDISPUTED FACTS AND PROCEDURAL HISTORY

On December 16, 2003, Gary Canada and the Arkansas Bar Foundation entered into an offer and acceptance for the purchase of real property by Canada from the Bar Foundation. Canada assigned his interests in the offer and acceptance to Arkansas Riverview Development, LLC. The offer and acceptance described the property to be conveyed as follows:

> Lots 4, 5 and 6, Block 99, Original City of Little Rock, and the contiguous portion of the east-west alley located within Block 99, Original City of Little Rock, Pulaski County, Arkansas, subject to a Lease with the City of Little Rock dated March 15, 1971, as amended and extended, containing all of the real property owned by the Arkansas Bar Foundation known as the Arkansas Bar Center, together with all appurtenances thereto, including, without limitations, air rights.

In the 1970's, the Bar Foundation built a building partly on Lots 4, 5 and 6, Block 99, Original City of Little Rock, which the Bar Foundation owned in fee simple, and partly in adjacent airspace above Garland Street, which was owned by the City of Little Rock and the rights to which were leased to the Bar Foundation. That building remained standing in the same location, partly on Lots 4, 5 and 6 of Block 99 and partly in the airspace above Garland Street, when Arkansas Riverview Development entered into the transaction with the Bar Foundation.

The Bar Foundation originally leased rights to the airspace above Garland Street from the City pursuant to a 99-year lease executed on May 10, 1971, recorded in Book 1345 at page 146. The original lease required the Bar Foundation to obtain the City's written consent prior to assigning the rights therein to a third party but stated that such consent would not be unreasonably withheld. The lease also provided a right of first refusal to "Camelot Inn - Little Rock, Inc. or its successors in the ownership and operation of the convention center hotel to be constructed over Garland Street west of the premises leased herein." The lease was amended on February 20, 1973, and extended on November 23, 1994. The 1973 amendment related largely to the relationship between the hotel and the Bar Foundation building to be built adjacent to the hotel. Among the provisions in the 1973 amendment are a provision allowing the west wall of the Bar Foundation building to abut the hotel and a provision imposing a height restriction on the Bar Foundation building of 427.0 feet (MSL Datum).

Some time shortly after execution of the offer and acceptance on December 16, 2003, a real estate agent requested that Beach Abstract & Guaranty Company, as agent for Chicago Title, provide title insurance for Arkansas Riverview Development. Chicago Title contends that no request was made for title insurance for the leasehold interest in the airspace over Garland Street but only for the

real property that had been owned in fee simple by the Bar Foundation.  Arkansas Riverview Development contends that title insurance was requested for the airspace over Garland Street.  Beach Abstract, acting as agent for Chicago Title, issued a title commitment for a fee simple estate for the following property: "Lots 4, 5 and 6, Block 99, Original City of Little Rock, Pulaski County, Arkansas AND the East-West alley in Block 99, Original City of Little Rock, Pulaski County, Arkansas."

On April 29, 2004, the parties closed the transaction, and a warranty deed was issued from the Bar Foundation to Arkansas Riverview Development for the following property: "Lots 4, 5 and 6, Block 99, Original City of Little Rock, Pulaski County, Arkansas AND the East-West alley in Block 99, Original City of Little Rock, Pulaski County, Arkansas.  Subject, however, to all easements, rights of way and restrictions of record."  The closing did not include an assignment of the Bar Foundation's leasehold interest in the airspace above Garland Street.  On May 4, 2004, Chicago Title issued its policy insuring Arkansas Riverview Development's title to Lots 4, 5 and 6 of Block 99.

In early 2006, Arkansas Riverview Development obtained a building permit pursuant to which it began renovation of the Bar Foundation building.  The renovation included adding stories to the multistory portion of the building, which was built largely in the airspace above Garland Street.  Arkansas Riverview Development then became aware that it had not received an assignment of the Bar Foundation's leasehold interest in the airspace above Garland Street and requested that the Bar Foundation execute an assignment.  On February 1, 2006, the Bar Foundation executed an assignment of the lease to the airspace "effective the 29th day of April, 2004."  The City was not

requested to consent nor did it give written consent to the assignment.[1]  Neither did the Bar Foundation give a right of first refusal to Capitol City Hotel Limited Partnership, the owner of the Doubletree Hotel, which then occupied the building previously occupied by the Camelot Hotel.[2]  On May 10, 2006, the Chief Executive Officer of the City Advertising and Promotion Commission sent a letter to the Bar Foundation and Arkansas Riverview Development contending that the airspace lease had been violated by the failure of the Bar Foundation to obtain the City's consent before the "attempted conveyance" of the lease, the failure of the Bar Foundation to give notice of the "attempted conveyance," to Capitol City Hotel Limited Partnership, a violation of the height restriction in the 1973 amendment to the airspace lease, and other matters.

On July 12, 2006, the City of Little Rock sent to Arkansas Riverview Development a notice that its building permit was being revoked because the application for the permit did not accurately reflect the ownership of the property.  On July 14, 2006, Arkansas Riverview Development commenced an action in this Court against the City of Little Rock and Capitol City Hotel Limited Partnership seeking to enjoin revocation of the building permit on due process grounds, seeking a declaration that the assignment of the airspace rights was valid, and seeking to quiet title to the airspace rights.  This Court preliminarily enjoined revocation of the building permit.  The parties later settled that action.  Part of the evidence in that case was that the new construction adding to the multistory portion of the Bar Foundation exceeded by a few feet the height limitation in the 1973

---

[1] In the ensuing litigation, Arkansas Riverview Development argued that the City's grant of the building permit amounted to consent to the assignment of the airspace lease.

[2] Before Canada and the Bar Foundation entered into the offer and acceptance, the real estate agent representing the Bar Foundation offered the property to Capitol City Hotel Limited Partnership, and that offer was rejected.  In the later litigation, Arkansas Riverview Development argued that Capitol City Hotel Limited Partnership had thereby waived the right of first refusal.

amendment to the lease.  Part of the settlement involved a cash payment by Arkansas Riverview Development to Capitol City Hotel Limited Partnership for release of its claim to a right of first refusal on the airspace rights, and part of the settlement entailed an exchange whereby the City of Little Rock conveyed the airspace rights in fee simple to Arkansas Riverview Development in return for the parking garage below the property.  Also as part of the settlement, the violation of the height restriction was resolved.

Arkansas Riverview Development made a claim against the title insurance policy for the sums it paid to settle with the City of Little Rock and Capitol City Hotel Limited Partnership, attorneys' fees incurred in that action, and other damages.  Chicago Title denied the claim.

Chicago Title commenced this action to obtain a declaratory judgment that it has no obligation on the claim by Arkansas Riverview Development.  Arkansas Riverview Development filed a counterclaim for breach of contract and negligence.  Chicago Title first filed a motion for summary judgment on the negligence claim and later filed a motion for summary judgment on the breach of contract claim.  Arkansas Riverview Development has filed a motion for partial summary judgment on the breach of contract claim.

## III.

### THE NEGLIGENCE COUNTERCLAIM

Arkansas Riverview Development's negligence claim against Chicago Title alleges that Chicago Title failed to conduct a reasonably diligent title search and failed to disclose the existence of the original 1971 lease between the Bar Foundation and the City of Little Rock for the airspace over Garland Street, as well as the existence of the conditions and restrictions on assignment of that lease.

Courts are divided on the issue of whether a title insurer may be liable in tort for a negligent title search. The issue is discussed at length in 1 Joyce Palomar, Title Insurance Law §§ 12:1 *et seq*., available at Westlaw, TITLEINS. Although the Arkansas cases are not crystal clear, this Court is satisfied that it would be inconsistent with Arkansas law to impose tort liability on a title insurer for a deficient title search, at least in a case such as this where the plaintiff requested only title insurance and not a title report.

Arkansas Riverview Development accurately notes that in Arkansas there is a "duty on the part of title companies to make a reasonable search of the relevant records to detect clouds or defects in title." *Welch Foods, Inc. v. Chicago Title Ins. Co.*, 341 Ark. 515, 521, 17 S.W.3d 467, 471 (2000); *Bourland v. Title Ins. Co. of Minn.*, 4 Ark. App. 68, 73, 627 S.W.2d 567, 570 (1982) ("[T]he insurer had a duty to search the records for clouds and other defects before issuing its policy."). However, these cases fail to establish that a violation of this duty creates liability in tort rather than for breach of contract. *Cf*. Comment, *Title Insurance: The Duty to Search*, 71 Yale L.J. 1161, 1181 (1962) ("a court must be careful not to confuse the preliminary question of whether the insurer is liable for a negligent search with the later question of whether that liability is contractual or tortious in nature. Many of the cases seem to have confused these two issues."). Arkansas Riverview Development has cited no case in which a title insurer was held liable in tort under Arkansas law for negligently searching property records. The plaintiffs in *Bourland* did not bring a negligence claim against their title insurer; they sought coverage for their losses under the title insurance policy. *Id*. at 69; 627 S.W.2d at 568. Thus, the duty described by the court was in reference to the title policy. In *Welch Foods*, the issue was whether Chicago Title, as subrogee to the buyers in a real estate transaction, was barred from recovery because its title search failed to discover the defect in the title.

Welch Foods argued that Chicago Title had a duty to research the real estate records properly, that it had breached the duty, and that its breach of that duty barred its subrogation claim.  The court said that the duty to make a reasonable search of the relevant records does not "extend[] beyond those to which the company is contractually obligated, or to those who have reasonably relied upon the search."  *Id.* at 521, 17 S.W.3d at 471.  Nothing in that case says that a title company may be liable in tort to its insured for failing to discover a title defect.

The Arkansas Court of Appeals has said, "it was settled in this state by an early decision of the Arkansas Supreme Court that an abstracter's liability is not in tort, but is contractual."  *Wright v. Allmon-Mack Agency, Inc.*, 270 Ark. 265, 268, 603 S.W.2d 483, 484-85 (Ark. App. 1980) (citing *Talpey v. Wright*, 61 Ark. 275, 32 S.W. 1072 (1895)).  Arkansas Riverview Development argues that *Wright* should be distinguished because it dealt with an abstractor's potential liability rather than a title insurer's.  If an abstractor's liability is in contract, not tort, all the more so a title insurer's liability must be, for an abstractor searches the records to prepare an abstract upon which someone else will rely, whereas a title insurance company searches the records for its own use in determining what it will or will not insure.

Arkansas Riverview Development is arguing that Chicago Title negligently performed its duties under the insurance contract, but the Supreme Court of Arkansas has held that negligent performance of an insurance contract is not a tort in Arkansas.  *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 490, 237 S.W.3d 32, 40 (2006) ("Farm Bureau [argues] that Arkansas does not recognize an independent tort for negligent performance of an insurance contract . . . . We agree . . . .").  Because Chicago Title had no duties independent of the title insurance policy, any claim for breach of a duty by Chicago Title must be confined to that policy.

Furthermore, the tort liability Arkansas Riverview Development seeks to impose would be that of negligent misrepresentation.  *See* RESTATEMENT (SECOND) OF TORTS § 552 and the Reporter's Note thereto.   However, in Arkansas no cause of action exists for negligent misrepresentation. *South County, Inc. v. First Western Loan Co.*, 315 Ark. 722, 725, 871 S.W.2d 325, 326 (1994).

Part of Arkansas Riverview Development's response on this point is that, while Arkansas does not recognize the tort of negligent misrepresentation, it does recognize the tort of constructive fraud, which does not require intent to deceive.  The short answer to this argument is that Arkansas Riverview Development's counterclaim alleges no claim for constructive fraud.  It does allege a claim for negligence, and the Court has addressed that claim, but negligence and constructive fraud are distinct torts with distinct elements.  *See id.* at 727, 871 S.W.2d at 326-27.  The Court declines to address whether Arkansas law would permit a claim against a title insurer for constructive fraud when no claim for constructive fraud has been pled in this case.

The duty of a title insurer is governed by the policy.  If the title insurance company issues a policy of title insurance, the insured's title is unmarketable, and there are no applicable exceptions or exclusions, the title insurer is liable whether it exercised reasonable care or not.  The insured need not prove that the title insurance company failed to exercise reasonable care.  Conversely, it is no defense to a claim on the title insurance policy that the insured failed to exercise reasonable care.  The issues are decided by applying the terms of the policy to the facts, not by analyzing fault.  It is the holding of this Court that, absent a request for a title report, Arkansas law does not recognize a claim of negligence by an insured against the title insurance company for lack of reasonable care in searching and disclosing the state of title.

9

The holding that Chicago Title cannot be liable for negligence might be different had Arkansas Riverview Development requested a title report and Chicago Title agreed to provide one. In *Heyd v. Chicago Title Ins. Co.*, 218 Neb. 296, 303, 354 N.W.2d 154, 158 (1984), which Arkansas Riverview Development cites, the court held that a title insurance company that renders a title report and issues a title insurance policy assumes two distinct duties and may be liable in tort for a deficient title report but can only be liable in contract on the policy. Here, however, Chicago Title was not asked to render a title report, nor did it do so. It issued a title commitment and later a title insurance policy conforming to the title commitment. Any liability that it may have must be in contract on the policy, not for negligence.

## IV.

## THE BREACH OF CONTRACT CLAIM

The insuring clause of the title insurance policy provided that Chicago Title would insure against loss or damage, not exceeding the amount of $950,000, sustained or incurred by Arkansas Riverview Development by reason of:

1.  Title to the estate or interest described in Schedule A being vested other than as stated therein;
2.  Any defect in or lien or encumbrance on the title;
3.  Unmarketability of the title;
4.  Lack of a right of access to and from the land.

Schedule A provided that the land insured was:

Lots 4, 5 and 6, Block 99, Original City of Little Rock, Pulaski County, Arkansas AND the East-West alley in Block 99, Original City of Little Rock, Pulaski County, Arkansas.

Schedule B provided, among other things, that the standard exceptions were removed from the policy. The removal of one of those standard exceptions is relevant here, specifically the

10

standard exception for: "Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises."

In addition to removing the standard exceptions, the special exceptions in Schedule B were as follows:

3.      Subject to the terms, power and provisions of that certain Lease and Agreement dated March 15, 1971, by and between The Arkansas Bar Foundation, a non-profit corporation, "Landlord", the City of Little Rock, Arkansas, and the Little Rock Municipal Parking Authority, "Tenants", a Memorandum of Lease of which was filed for record May 13, 1971, in Mortgage Book 1345, Page 141, Amendment to the Lease and Agreement dated June 22, 1971, recorded in Mortgage Book 1365, Page 411, Amendment to Lease recorded in Book 1365, Page 415, and Agreement recorded in Book 1471, Page 27, as extended and amended by Extension of Lease and Consent to Sub-Lease by and between The Arkansas Bar Foundation and the City of Little Rock, Arkansas, dated as of October 28, 1994, filed for record November 2, 1994, of record as Instrument No. 94-76906, and the Extension of Lease by and between the City of Little Rock, Arkansas, and The Arkansas Bar Foundation, dated November 23, 1994, filed for record December 19, 1994 and recorded as Instrument No. 94-85565, and Construct and Lease, Parking and Concession Agreement dated November 2, 1994, by and between the City of Little Rock, Arkansas, and Capitol City Hotel Limited Partnership, an Illinois Limited Partnership, a Memorandum of Lease having been executed November 2, 1994, filed for record November 2, 1994, of record as Instrument No. 94-76907, and amended by and between City of Little Rock, Arkansas, a municipal corporation and City Advertising and Promotion Commission of Little Rock, Arkansas, as "Lessor", and Capitol City Hotel Limited Partnership, an Illinois Limited Partnership, as "Lessee" by First Amendment to Construct and Lease, Parking and Concession Agreement dated September 25, 2002, filed for record September 25, 2002 of record as Instrument No. 2002180268, Second Amendment to Construct and Lease, Parking and Concession Agreement dated September 25, 2002, filed for record September 25, 2002 of record as Instrument No. 2002180269, and Non-Disturbance Agreement dated September 25, 2002, filed for record September 25, 2002 of record as Instrument No. 2002180273, records of the Circuit Clerk of Pulaski County, Arkansas.

4.      Amendment to Lease dated September 15, 1972, by and between Arkansas Bar Foundation and Pulaski County, Arkansas, filed for record September 28, 1972 and recorded in Mortgage Book 1436, Page 24, records of Pulaski County, Arkansas.

5.      Lease and Agreement dated May 26, 1972, by and between Arkansas Bar Foundation and Pulaski County, Arkansas, filed for record December 28, 1972 and recorded in Mortgage Book 1453, Page 277, records of Pulaski County, Arkansas.

6.      Rights of tenants in possession under unrecorded leases.

7.      Encroachment of Hotel Drive onto the East-West alley in Block 99 of the subject property, encroachment of brick paved area onto the right of way of Conway Street and onto property to the West of subject property, encroachment of concrete walls and stairs onto the right of way of Conway Street and encroachment and/or variation in location of concrete wall and concrete steps with respect to property lines in the Southeastern corner of subject property, all as shown on survey prepared by Paul M. White, Registered Land Surveyor, dated February 16, 2004.

It is undisputed that the survey referenced in paragraph 7 of the special exceptions was provided to Beach Abstract.  The survey showed that the Bar Foundation building was built partly on the tract described in Schedule A and partly on the adjacent airspace above Garland Street.  Paragraph 7 of the special exceptions shows that Chicago Title excepted all of the matters shown on the survey that might cloud title to Lots 4, 5 and 6 of Block 99 except the fact that the building was located partly on that tract and partly in the airspace above Garland Street.

Although the issues are complicated and the parties have extensively discussed them in excellent briefs, most of the issues resolve into two basic questions: first, when Chicago Title issued its policy insuring Arkansas Riverview Development's title to Lots 4, 5 and 6 of Block 99, did Arkansas Riverview Development have marketable title? and, if not, does the title insurance policy except or exclude the matter that rendered the title unmarketable?

A.      MARKETABILITY OF THE TITLE

The Court has no hesitation in saying that Arkansas Riverview Development did not have marketable title to Lots 4, 5 and 6 of Block 99 when the title insurance policy was issued.  A multistory building was located partly on that tract and partly in the adjacent airspace, no right to

which had been conveyed to Arkansas Riverview Development when the title insurance policy was issued. "A marketable title is one that a prudent person with full knowledge of all of the facts would be willing to accept." David A. Thomas, *Title and Marketable Title*, in 11 THOMPSON ON REAL PROPERTY, SECOND THOMAS EDITION § 91.09(a)(1) (David A. Thomas, ed., 2002). "It should be such a title as would insure to the purchaser a peaceful enjoyment of the property." *Id*. No prudent person with full knowledge of all of the facts would be willing to accept title to Lots 4, 5 and 6 of Block 99 with a building built partly on those lots and partly on adjacent property without also obtaining rights to the adjacent property. A person could not have peaceful enjoyment of such property. In *Carrick v. Gorman*, 232 Ark. 729, 732, 340 S.W.2d 377, 379 (1960), the court held that title to property on which a hotel was located was not marketable because a brick wall of the hotel building encroached upon adjoining land, some of which was owned by the United States. The court said, "It goes almost without saying that in this situation the seller's title is not merchantable." *Id*.

Chicago Title also argues that the fact that the building sat partly on the tract that was conveyed and partly on a tract that was not conveyed may mean that the property was unmarketable but does not mean that the title was unmarketable. Chicago Title cites *First United, Inc. v. Chicago Title Ins. Co.*, 366 Ark. 508, 237 S.W.3d 15 (2006), for the proposition that Arkansas Riverview Development's problem was unmarketability of the property rather than unmarketability of the title. There, First United held a mortgage on a parcel of land on which sat a timeshare development adjacent to a hotel. The original developer of the timeshare development and the owner of the hotel had agreed that persons who purchased timeshare interests would be entitled to use the amenities of the hotel. After a period of time, both the timeshare development and the hotel were sold at foreclosure. Subsequent litigation resulted in a ruling that the foreclosures had terminated the license

agreement and that successors in interest to the timeshare developer owed damages to purchasers of the timeshare units of approximately $1.6 million due to the fraud of the original developer.  First United was a potential successor to the original developer but had not taken title to the property because, were it to do so, it would be exposed to liability for the judgment pursuant to the Arkansas Supreme Court's interpretation of the Time Share Act.  *Id.* at 510, 237 S.W.3d at 17.  First United made a claim against the title insurance policy, which Chicago Title denied.  The Supreme Court of Arkansas said:

> In the present case [First United] does not dispute that, should it choose to take title to the land, it would have the right to possess, control, and dispose of the property. There are no conflicting claims to the property.  Instead [First United] is simply asserting that because the pending judgment makes the property unattractive to potential purchasers, a defect in title exists.  We do not agree, and . . . we hold that the loss in real estate value as a result of a purchaser's potential liability as a successor-in-interest under the Time Share Act does not constitute a "defect" in title for purposes of title insurance.

*Id.* at 512, 237 S.W.3d at 18.  Further in the opinion, the court said:

> [First United] here appears to possess fee simple title to the land, whatever it might be worth, and we agree that it is possible to hold perfect title to land that is valueless. [First United] has failed to appreciate the distinction between land that is unmarketable and title that is unmarketable, and its arguments emphasize factors that relate to the lack of economic value of the land itself, rather than to a title that is unmarketable.  [First United] is free to possess and control the land, or to sell it to whatever purchaser desires to buy it.  Accordingly, we hold that the judgment in this case does not make title to the land unmarketable.

*Id.* at 513, 237 S.W.3d at 18.

Here, when Arkansas Riverview Development took title to Lots 4, 5 and 6 of Block 99, it did not "have the right to possess, control, and dispose of the property" because there were "conflicting claims to the property," *i.e.*, the fact that someone else owned the right to the airspace above Garland Street where a large portion of the building was located.  The property included the building, and

Arkansas Riverview Development did not take title to a substantial portion of the building. Therefore, as the court held in *Carrick*, 232 Ark. at 732, the title was unmarketable.

**B.      EXCEPTIONS AND EXCLUSIONS AS TO MARKETABILITY OF THE TITLE**

Had the standard exceptions not been removed, coverage might well be defeated by the standard exception for "[e]ncroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises."  The fact that the building was built partly on Lots 4, 5 and 6 of Block 99 and partly in the airspace above Garland Street would have been, and in fact was, shown by the survey.  Chicago Title argues that the removal of this exception does not change the result because, even though the building was built partly on Lots 4, 5 and 6 of Block 99 and partly on the airspace above Garland Street, the fact that the building straddled the line does not mean that there was an encroachment.  Chicago Title argues that an encroachment is a trespass, citing 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 68.09[1] (Michael Allan Wolf ed., 2000); BLACK'S LAW DICTIONARY 568 (8th ed. 2004).  That argument fails for three reasons.  First, an encroachment is not always defined as a trespass.  One treatise explains:

> An encumbrance by reason of encroachment exists when the owner of adjoining premises is occupying some part of the property under examination, either with buildings or otherwise.  If the encroachment exists by reason of a license from the vendor, the matter usually can be resolved by revocation of the license or by executing a formal lease between the occupant and the purchaser.  But, if the encroachment is based upon an easement created by an unrecorded grant, by prescription, or by implication when the owner of two tracts sells one tract upon which a structure exists that rests partly upon the other, the easement is an encumbrance upon the servient tract.  If the encroachment is substantial, it constitutes an encumbrance that justifies a purchaser in rejecting title.  In most jurisdictions, slight encroachments also make title unmarketable, unless the encroachments are considered beneficial to the vendor's property.

> An encumbrance also exists when the building or other structures on a vendor's land encroach upon land of adjoining owners without the sanction of an appurtenant easement.

3 JOYCE PALOMAR, PATTON AND PALOMAR ON LAND TITLES § 676 (Third Ed. 2003).  Thus, an encroachment can exist by reason of a license, based upon an easement created by an unrecorded grant, by prescription, or by implication.  Arkansas Riverview Development has cited Chicago Title's website, which defines *encroachment* as, "construction onto the property of another, as of a wall, fence, building, etc."  The definition of *encroachment* on Chicago Title's website does not require that the construction onto the property of another be a trespass.  The policy at issue does not define the term *encroachment*.  When a provision is susceptible to more than one reasonable interpretation, that provision is ambiguous.  *State Farm Fire & Cas. Co. v. Midgett*, 319 Ark. 435, 438, 892 S.W.2d 469, 471 (1995).  When a provision in an insurance policy is ambiguous, the ambiguity must be resolved against the insurance company.  *Metropolitan Life Ins. Co. v. Minton*, 188 Ark. 456, 460-61, 66 S.W.2d 627, 629 (1933).  Because the policy does not define the term *encroachment*, and because the term *encroachment* can mean a trespass but also can mean construction onto the property of another even when there is no trespass, the term is ambiguous, so doubt as to its meaning must be resolved against Chicago Title.

Secondly, this argument fails because it does not address the fact that the remainder of the standard exception at issue includes overlaps or other matters that would be disclosed by a survey or an inspection of the premises.  Even if the term *encroachment* were limited to trespasses, the remainder of the language in the standard exception would encompass this situation, where the building was built partly on the tract that was conveyed and partly on an adjacent tract that was not conveyed.

16

Most importantly, the proper order of reasoning on this issue is not to begin with the standard exception, see what would have been excepted from the policy had the standard exception not been removed, and then decide whether the removal of the standard exception creates coverage. The proper order of reasoning is to look at the insuring clause to determine whether the insuring clause would cover the instance at hand and, if it would, then to look to the exceptions and exclusions to see whether any of them would except or exclude coverage. Here, the insuring clause provided that Chicago Title insured that Arkansas Riverview Development had marketable title to Lots 4, 5 and 6 of Block 99. An existing building sat partly on that property and partly on an adjacent tract. No rights to the adjacent tract were conveyed. In these circumstances, the title to Lots 4, 5 and 6 of Block 99 was not marketable. Had the standard exception for encroachments, overlaps, or other matters that would have been disclosed by a survey or an inspection of the premises not been removed from the policy, that exception might well have defeated coverage in this instance, but that exception was removed from the policy and may therefore be disregarded. Arguments about the meaning of the terms in that removed exception do not change the fact that Chicago Title insured that Arkansas Riverview Development had marketable title to Lots 4, 5 and 6 of Block 99, nor the fact that Arkansas Riverview Development did not have marketable title because it did not receive an assignment of the airspace rights on which a substantial portion of the building sat.

A more difficult issue is whether the matters listed in paragraph 3 of the special exceptions excepted from coverage the fact that the building sat partly on airspace the rights to which were not conveyed. The difficulty is that the original lease of the airspace rights from the City to the Bar Foundation, executed in 1971, is not listed in the special exceptions, but the 1973 amendment to and the 1994 extension of the original lease are. The original lease did not mention Lots 4, 5 and 6 of

17

Block 99, so it does not appear in the chain of title to those lots, but the subsequent amendment and extension did mention those lots and do appear in the chain of title. Because the subsequent amendment and extension appear in the chain of title, they were listed in the special exceptions, whereas the original lease was not.

Chicago Title's argument is that, in Arkansas, when a written contract refers to another instrument, the two are construed together as the agreement of the parties. *See F & M Bldg. P'ship v. Farmers & Merchs. Bank*, 316 Ark. 60, 67, 871 S.W.2d 338, 342 (1994); *Isbell v. Ed Ball Constr. Co., Inc.*, 310 Ark. 81, 85, 833 S.W.2d 370, 372 (1992); *Int'l Graphics, Inc. v. Bryant*, 252 Ark. 1297, 1299, 482 S.W.2d 820, 821 (1972). While that rule of construction may mean that, as between the City and the Bar Foundation, the subsequent amendment and extension must be construed along with the original lease as the agreement between the City and the Bar Foundation, it does not necessarily mean that, because the title insurance policy listed as special exceptions the 1973 amendment and the 1994 extension, the original lease was *ipso facto* included in the special exceptions. Another rule of contract interpretation is *expressio unius est exclusio alterius*, which provides that the mention in a contract of one or more of a class of things implies the exclusion of all members of the class that were not mentioned. *Provident Life & Acc. Ins. Co. v. Williams*, 858 F. Supp. 907, 911 (W.D. Ark. 1994). Following this rule of construction would mean that, because the special exceptions named the 1973 amendment and the 1994 extension but not the original lease, the original lease was not excepted.

"[I]f a lien, encumbrance or other title defect is to be excepted from coverage, the title insurer must use clear, precise and unambiguous language in the exception." 1 JOYCE PALOMAR, TITLE INSURANCE LAW § 7:17. Listing in the special exceptions the amendment to and the extension of

the original lease of the airspace rights without listing the original lease does not constitute "clear, precise and unambiguous language" excepting from coverage the fact that the building was built partly on Lots 4, 5 and 6 of Block 99 and partly on the airspace above Garland Street.  Indeed, it is hard to make any sense out of the special exceptions as applied to the facts of this case.  The special exceptions excepted the 1973 amendment to and the 1994 extension of the original lease but not the original lease; and they removed the standard exception for matters that would be shown by a survey and then excepted the matters shown on the survey without mentioning the elephant in the room – the fact that the building was built partly in the airspace above Garland Street pursuant to the original lease, which was not listed in the exceptions, and the 1973 amendment, which was.  Because the special exceptions do not clearly, precisely, and unambiguously except the fact that the building was built partly on the tract that was conveyed and partly on a tract that was not conveyed, the special exceptions do not defeat coverage.

Chicago Title makes several other arguments in support of its motion for summary judgment on the breach of contract claim and against the motion for partial summary judgment filed by Arkansas Riverview Development.  One of the arguments is that Arkansas Riverview Development's problem was created by the failure of Arkansas Riverview Development and the Bar Foundation to comply with the requirements in the original lease that it obtain written consent from the City to assign the airspace lease and that it give a right of first refusal to the Camelot Hotel or its successors.  Chicago Title characterizes these failures as "lease compliance problems" as opposed to defects in title to Lots 4, 5 and 6 of Block 99.  However, the fact remains that the building sat partly on a tract that was conveyed and partly on a tract that was not conveyed, which means that the title to the tract

that was conveyed was not marketable. The title insurance policy contains no exception or exclusion for "lease compliance problems."

Chicago Title also argues that coverage is unavailable because the policy excludes defects, liens, encumbrances, adverse claims or other matters created subsequent to the date of the policy. The policy was issued on May 4, 2004. Chicago Title argues that the problem was created by the assignment of the airspace lease in February 2006, but that is not so. The problem was that the building sat partly on the tract that was conveyed and partly on a tract that was not conveyed, a condition that existed on the date that the policy was issued. That condition was not a defect or other matter created subsequent to the date of the policy.[3]

Chicago Title argues that it should prevail because of the exclusion for matters that are created, suffered, assumed or agreed to by the insured claimant. Its argument on this point is that Arkansas Riverview Development elected to take an assignment of the lease to the airspace rights and agreed to undertake all of the obligations of the Bar Foundation pursuant to the lease, which then created the problems about which it now complains. Again, that is simply not true. What made the title to Lots 4, 5 and 6 of Block 99 unmarketable was the fact that the building on that tract also occupied another tract that was not conveyed.

Chicago Title also argues that coverage is excluded because Arkansas Riverview Development knew that the building sat partly on Lots 4, 5 and 6 of Block 99 and partly in the airspace over Garland Street. Arkansas Riverview Development disputes that fact. The policy excludes from coverage defects, liens, encumbrances, adverse claims or other matters "not known

---

[3] The violation of the height restriction, however, was a problem that was created after the policy was issued, so any damages paid to obtain a waiver of the height restriction would not be covered.

to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company . . . ." This exclusion applies when the insured knows of an unrecorded defect in or cloud upon the title of which the title insurance company is unaware and fails to disclose it. Here, however, it is undisputed that the survey was provided to Chicago Title's agent, Beach Abstract, and that the survey showed that the building sat partly on Lots 4, 5 and 6 of Block 99 and partly in the airspace above Garland Street. Furthermore, the original lease was in the public record and Chicago Title knew of it by virtue of having seen the 1973 amendment to it and the 1994 extension of it. The exclusion for unrecorded matters known to the insured but not disclosed to the title insurance company does not apply here. *Bourland*, 4 Ark. App. at 73, 627 S.W.2d at 570 ("Mere knowledge of a defect in one's insured title is not, in and of itself, a defense to the action on the policy unless that knowledge not possessed by the insurer is willfully withheld.").

It is undisputed that Chicago Title insured that Arkansas Riverview Development had marketable title to Lots 4, 5 and 6 of Block 99 to the original City of Little Rock when the policy of insurance was issued. It is undisputed that when the policy of insurance was issued a large portion of the building located on that tract also occupied an adjacent tract that was not conveyed. As a matter of law, that fact rendered the title to Lots 4, 5 and 6 of Block 99 unmarketable. There are no exceptions or exclusions in the policy that clearly, precisely, and unambiguously except or exclude that fact from coverage.

## C.   OTHER POLICY DEFENSES

In addition to the arguments pertaining to the insuring clause and the exclusions relating to the marketability of title, Chicago Title also argues that Arkansas Riverview Development's motion

for summary judgment should be denied because of section 9(c) of the conditions and stipulations of the policy, which provides, "The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company." Part of Chicago Title's argument on this point amounts to a reiteration of its argument that Arkansas Riverview Development's problems were created by the fact that it took an assignment of the Bar Foundation's lease of the airspace rights in February 2006. As the Court has held above, that assignment did not create the problems of which Arkansas Riverview Development complains. Those problems were created by the fact that the building sat partly on Lots 4, 5 and 6 of Block 99 and partly in the airspace above Garland Street.

The other part of Chicago Title's argument is that Arkansas Riverview Development voluntarily settled the claims of the City and with Capitol City Hotel Limited Partnership and did so without its consent. Chicago Title admits that on May 2, 2006, Arkansas Riverview Development notified Chicago Title's agent, Beach Abstract, of a policy claim as a result of an encroachment of the building in the airspace above Garland Street. Chicago Title also admits that by letter dated February 13, 2007, it informed Arkansas Riverview Development, "We have determined that the claim is not covered under the terms of the policy," and that the settlements between Arkansas Riverview Development, the City, and Capitol City Hotel Limited Partnership were reached on March 7 and 8, 2007. Arkansas Riverview Development argues that, because the settlements were reached after Chicago Title denied coverage, Arkansas Riverview Development was not required to obtain Chicago Title's consent, citing *Vincent Soybean & Grain Co. v. Lloyd's Underwriters of London*, 246 F.3d 1129 (8th Cir. 2001); *Carter v. Aetna Cas. & Sur. Co.*, 473 F.2d 1071 (8th Cir. 1973); *Home Indem. Co. v. Snowden*, 223 Ark. 64, 264 S.W.2d 642 (1954).

*Snowden* held, "While the insured is generally prohibited from making a settlement of a claim under policies giving that right to the insurer, a different rule obtains where the insurer itself, in bad faith, breaches the contract by arbitrarily refusing to settle." *Snowden*, 223 Ark. at 70, 264 S.W.2d at 645. *Snowden* also quoted a portion of C.J.S. ON INSURANCE for the proposition that if an insurance company breaches its contract by refusing to defend or settle and denying liability, or by withdrawing from the case, the insured is released from its agreement not to settle. *Id*. at 70, 264 S.W.2d at 646.

In *Carter*, the Eighth Circuit held, "Once an insurer breaches its contract by refusing to defend an action against its insured, it takes the risk that the insured will have a judgment entered against him, or will accept a settlement with the injured party.  The insurer is liable on its refusal to defend, and must pay the amount of the judgment or settlement, at least up to the policy limits, absent collusion or bad faith by the insured." *Carter*, 473 F.2d at 1078.

In *Vincent Soybean & Grain*, the court held that an insured had violated its duty not to settle by entering into a settlement without the permission of the insurance company when the insurance company agreed to defend the insured under a reservation of rights.  246 F.3d at 1131.

Here, the policy provided that Chicago Title would defend a claim upon written request of the insured that it do so.  Chicago Title says that Arkansas Riverview Development never tendered to it the defense of the claims of the City and Capitol City Hotel Limited Partnership and that it never refused to defend those claims.  As noted, it is undisputed that on May 2, 2006, Arkansas Riverview Development notified Beach Abstract as agent for Chicago Title of a claim against the policy based on the encroachment of the building into the airspace above Garland Street.  However, no evidence in the record shows whether the notice of claim was made orally or in writing or what the content

of the notice of claim was.  Most importantly, no evidence in the record shows that Arkansas Riverview Development requested Chicago Title to defend it against the claims of the City and Capitol City Hotel Limited Partnership.  Because no evidence shows that Arkansas Riverview Development asked Chicago Title for a defense, Arkansas Riverview Development has failed to meet its burden under Rule 56(c) of showing that there is no genuine issue of fact as to whether Chicago Title breached its contract.

It is true that Chicago Title sent a letter on February 13, 2007, stating its view that the policy did not provide coverage, but that letter, by itself, does not show that Chicago Title breached its contract.  It is well settled in Arkansas that the duty to defend is broader than the duty to pay damages.  *Home Indem. Co. v. City of Marianna*, 291 Ark. 610, 618, 727 S.W.2d 375, 379 (1987). Even though Chicago Title wrote in February 2007 that it had determined that the claim was not covered, that fact alone does not mean that Chicago Title refused to defend Arkansas Riverview Development against the claims of the City and Capitol City Hotel Limited Partnership.  The cases upon which Arkansas Riverview Development relies to show that it could settle with the City and Capitol City Hotel Limited Partnership without consent from Chicago Title are cases that hold that when an insurance company has breached its contract the insured may settle without consent.  Here, at the summary judgment stage, the Court cannot say that Chicago Title breached its contract and so cannot say that Arkansas Riverview Development was released from its agreement not to settle without Chicago Title's written consent.

In a related issue, Chicago Title argues that coverage is defeated by the exclusion in the policy for defects, liens, encumbrances, adverse claims or other matters that result in no loss or damage to the insured.  Chicago Title argues that Arkansas Riverview Development, when it settled,

received a perpetual interest in the rights to the airspace, and that this benefit enabled Arkansas Riverview Development to sell condominiums that, by Arkansas Riverview Development's own admission, otherwise would have been unmarketable even if the assignment of the airspace lease from the Bar Foundation had been valid. Chicago Title contends that there is a genuine issue of fact as to whether the benefits received by Arkansas Riverview Development exceeded any loss or harm that it suffered. There is no evidence before the Court by which it could be determined what Arkansas Riverview Development's damages were or what it gained by virtue of settling with the City and Capitol City Hotel Limited Partnership, nor have the parties fully briefed the issue of what the legal effect would be if the facts were to show that Arkansas Riverview Development gained more in its litigation and settlement with the City and Capitol City Hotel Limited Partnership than it lost. Moreover, to the extent that the settlement included consideration for a waiver of the height limitation in the 1973 amendment to the lease, that consideration would not be damage for which Chicago Title would be liable under the policy. Factual issues regarding the settlement and their effect on Arkansas Riverview Development's breach of contract claim remain.

Chicago Title has argued that the Court should deny Arkansas Riverview Development's motion for partial summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, and in support of that argument Chicago Title has provided an affidavit stating that no depositions have been taken in this case. This case is more than a year old. Chicago Title has identified no document that it needs to justify its opposition to Arkansas Riverview Development's motion for summary judgment and no material witness, other than Brad Canada, from whom it cannot obtain evidence without a deposition. Chicago Title has access to its own employees and to the employees of Beach Abstract, so it can obtain evidence from them without depositions. The principal

representative of Arkansas Riverview Development, Brad Canada, has been examined under oath

by Chicago Title in connection with this claim.  Chicago Title has the transcript of that examination,

the transcript of a deposition that he gave in the case with the City, and a transcript of his testimony

at the preliminary injunction hearing in the case with the City.  Chicago Title has not shown that "it

cannot present facts essential to justify its opposition," so the Court declines to deny or continue

Arkansas Riverview Development's motion for summary judgment based on Rule 56(f).

     With respect to many of the issues, there is no genuine issue of material fact.  Those issues

have been resolved as stated above on summary judgment.  Arkansas Riverview Development has

not met its burden of showing that there is no genuine issue of material fact on the question of

whether Chicago Title breached its contract so as to allow Arkansas Riverview Development to

settle with the City and Capitol City Hotel Limited Partnership without Chicago Title's consent.  No

evidence is before the Court regarding damages to Arkansas Riverview Development or gain to

Arkansas Riverview Development by virtue of the events at issue.  Therefore, those issues remain

for trial.

## CONCLUSION

     Chicago Title's motion for summary judgment on the negligence counterclaim is

GRANTED.  Document #12.  Chicago Title's motion for summary judgment on the breach of

contract counterclaim is DENIED.  Document #32.  Arkansas Riverview Development's motion for

partial summary judgment on the breach of contract counterclaim is GRANTED IN PART and

DENIED IN PART.  Document #47.  Arkansas Riverview Development's motion for partial

summary judgment on the breach of contract counterclaim is granted on the issue of whether it had

marketable title to Lots 4, 5 and 6 of Block 99 of the Original City of Little Rock when Chicago Title

issued the policy of title insurance, and on the issue of whether any of the exceptions or exclusions

in the policy except or exclude the condition that rendered the title unmarketable, *i.e.*, the fact that

the building sat partly on Lots 4, 5 and 6 of Block 99 and partly in the airspace rights above Garland

Street.   Summary judgment is denied on Arkansas Riverview Development's motion for partial

summary judgment on the breach of contract counterclaim on the issue of whether coverage is

precluded by section 9(c) of the conditions and stipulations of the policy.   The motion for partial

summary judgment is also denied with respect to the exclusion for defects, liens, encumbrances,

adverse claims or other matters that result in no loss or damage to the insured claimant.

      IT IS SO ORDERED this 29th day of August, 2008.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE