**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

CHICAGO TITLE INSURANCE COMPANY                                                        PLAINTIFF

v.                                            No. 4:07CV00554 JLH

ARKANSAS RIVERVIEW DEVELOPMENT, LLC                                         DEFENDANT

**OPINION AND ORDER**

Arkansas Riverview Development, LLC, has filed a motion for summary judgment on the remaining liability issues on its claims against Chicago Title Insurance Company. The Court previously entered partial summary judgment in favor of Arkansas Riverview Development. *Chicago Title Ins. Co. v. Arkansas Riverview Dev., LLC*, 573 F. Supp. 2d 1152 (E.D. Ark. 2008). The history of this litigation and the standards for ruling on a motion for summary judgment are stated in that opinion and will not be repeated here. The remaining issues are whether some or all of Arkansas Riverview Development's claims are barred because it settled the prior litigation without the written consent from Chicago Title Insurance Company and whether Arkansas Riverview Development's claims are barred by the provision in the policy that excludes from coverage defects, liens, encumbrances, adverse claims, or other matters resulting in no loss or damage to the insured claimant.

**I.**

**SETTLEMENT WITHOUT CONSENT**

Paragraph 9(c) of the conditions and stipulations of the title insurance policy in question provides, "The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the

Company." It is undisputed that Arkansas Riverview Development settled the prior litigation with the City of Little Rock and with City Hotel Limited Partnership and, in doing so, removed the matters that rendered its title to the subject property unmarketable. It is also undisputed that Chicago Title Insurance Company did not give written consent for Arkansas Riverview Development to enter into those settlements.

Nevertheless, Arkansas Riverview Development argues that the undisputed facts show that Chicago Title Insurance Company is barred, as a matter of law, from asserting reliance on that provision of the policy. Arkansas Riverview Development advances several arguments in support of its contention that Chicago Title Insurance Company may not rely on paragraph 9(c) of the conditions and stipulations of the policy. The Court finds one of those arguments persuasive and will not address the others.

In *Courson v. Maryland Cas. Co.*, 475 F.2d 1030 (8th Cir. 1973), the Eighth Circuit, applying Arkansas law, held that an insurance company had waived its right to enforce a provision in the uninsured motorist clause of a casualty policy stating that the insured could not settle with anyone who might be liable without written consent of the company. In that case, a lawyer for the insured had written the insurance company on three occasions informing the insurance company that a trial was imminent and asking if some kind of settlement could be made. The insurance company made no response. Prior to the trial, the insured entered into a settlement without further notice to the insurance company. The district court entered judgment for the insured against the insurer, holding that the insurance company had waived the no settlement provision. The Eighth Circuit affirmed on that issue. The Eighth Circuit described that "settlement exclusion" as a forfeiture, and said that under Arkansas law forfeitures are not favored. *Id.* at 1033. The court then said:

> In this case, Courson gave Maryland every opportunity to participate in the settlement negotiations with Crane and his insurance carrier. His requests for participation were completely ignored and Courson was entitled to assume that if any objection to the settlement was going to be made by Maryland, it would have been communicated prior to the time he attempted to collect on the judgment entered on June 9, 1970. We are satisfied that the Supreme Court of Arkansas would hold this failure to act constitutes sufficient proof of circumstances indicating "an election to waive a forfeiture."

*Id.* at 1034 (quoting *Home Mut. Fire Ins. Co. v. Riley*, 252 Ark. 750, 752, 480 S.W.2d 957, 958 (1972)); *see also Queen of Arkansas Ins. Co. v. Forlines*, 94 Ark. 227, 126 S.W. 719, 722 (1910) (a course of action by an insurer that leads an insured to believe that a forfeiture of the policy will not be incurred will estop the company from insisting on the forfeiture); *German-American Ins. Co. v. Harper & Wilson*, 75 Ark. 98, 86 S.W. 817 (1905) (having knowledge of a fact that would result in forfeiture but failing to invoke the forfeiture until after a loss estops the insurer from invoking the forfeiture); *see also* Randy J. Sutton, Annotation, *Conduct or Inaction by Insurer Constituting Waiver of, or Creating Estoppel to Assert, Defense of Consent to Settle Provision Under Insurance Policy*, 16 ALR 6th 491 (2006).

The undisputed facts relevant to the issue here are as follows. On July 12, 2006, the City of Little Rock revoked the building permit that had been issued to Arkansas Riverview Development. The reason stated for the revocation was that the building permit "does not accurately reflect the owner of all the property in question, and the owner of a substantial portion of the property has not provided permission." The basis for that assertion was that only part of the building sat on land conveyed to Arkansas Riverview Development. The other part of the building occupied air space above Garland Street. The City had leased the air space rights to the Arkansas Bar Foundation, which built the building partly on land and partly in air space. The lease provided that the City of

Little Rock's permission was needed for any assignment of the air space lease, but the City had not been asked to consent to the assignment to Arkansas Riverview Development. The lease also provided that the owners of an adjacent hotel would have a right of first refusal for any conveyance of the air space rights. Arkansas Riverview Development commenced an action in this Court against the City of Little Rock and Capitol City Hotel Limited Partnership, which then owned the adjacent hotel, to enjoin revocation of the building permit and for other relief. This Court preliminarily enjoined revocation of the building permit. The parties settled that action in the spring of 2007.

Before the building permit was revoked, and before the prior litigation ensued, Arkansas Riverview Development had given Chicago Title Insurance Company notice of a claim against the policy. On May 2, 2006, D. Nicole Lovell, an attorney who represented Arkansas Riverview Development, wrote a letter to Brett Pitts of Beach Abstract Company in Little Rock, the underwriting agent for Chicago Title Insurance Company, stating that Capitol City Hotel Limited Partnership had offered to relinquish its claim of a right of first refusal in return for a payment of $50,000. Lovell asked in that letter whether Chicago Title Insurance Company would contribute $20,000 toward that settlement. Pitts sent an email to Lovell requesting that she put the claim in writing and submit it to him so that he could send it to Chicago Title. She then wrote another letter on May 5, 2006, describing the matter that rendered the title unmarketable and making a formal claim on the title insurance policy. On July 11, 2006, Chicago Title Insurance Company acknowledged receipt of the notice of claim and stated that the matter had been referred to a claims attorney named Franklin Starr to handle the claim. On July 21, 2006, an officer of Beach Abstract & Guaranty Company sent to Starr a copy of Beach Abstract's transactional file and a copy of what had been filed in this Court. On July 31, 2006, Lovell also wrote Starr to describe the basis of

4

Arkansas Riverview Development's claim against the title insurance policy and to provide information regarding the litigation.

In November 2006, Chicago Title took the deposition of Brad Canada, an officer of Arkansas Riverview Development, as it had the right to do under the policy.

On January 24, 2007, Capitol City Hotel Limited Partnership made another offer of settlement to Arkansas Riverview Development. Lovell forwarded a copy of the settlement offer to Chicago Title Insurance Company, who by then was represented by a North Little Rock attorney named Ernest H. Harper, Jr. Harper informed Lovell that she would have Chicago Title Insurance Company's position on the claim by Friday, February 9, 2007, but on that date he notified her that the response would not be available until Monday, February 12. In response to Harper's message, Lovell stated that the subject of mediation had been brought up at a deposition, and that the parties all seemed to be in agreement that mediation would be appropriate.

Lovell again wrote Harper on February 12 and stated:

> I would like to discuss mediation with you today if at all possible. We are trying to get on a mediator's calendar in case the Court chooses not to direct mediation. If we submit to voluntary mediation, the City will not participate. It is important that I understand Chicago Title's position as soon as possible.

On February 13, 2007, Franklin Starr wrote a letter on behalf of Chicago Title Insurance Company to Lovell explaining the title insurance company's position on coverage of the claim. That letter stated, in more detail than will be reiterated here, that the policy did not provide coverage because the lease and air rights in question are over lands located outside the property description in Schedule A of the policy and because certain exceptions and exclusions in the policy excluded or excepted from coverage the matter at issue. Lovell responded on February 16, 2007, with a

5

lengthy attempt to rebut each of the arguments that had been made in Starr's letter. The penultimate paragraph of Lovell's letter stated:

> Please understand that we will pursue this claim. However, we do believe that we may be able to settle this claim for less than the amount of the Policy if we do so before trial. Therefore, we ask that your client participate in a mediation which has been ordered by the Federal District Court (see enclosed) on March 7 and 8. The Court has asked that we provide it with the most recent settlement offer by February 28. It is imperative that we hear back from you prior to that date. We believe that it is in everyone's best interest to settle this case and clear the title prior to trial. If Chicago Title does not agree to participate in the mediation or offer an amount for settlement by February 26, we will have no choice but to file suit against Chicago Title. My client continues to suffer damages by Chicago Title's failure to identify the encroachment of the building and the Air Rights Lease.

Harper replied on February 23. He said that Arkansas Riverview Development had not provided Chicago Title Insurance Company with any monetary demand or any evidence or estimate of loss, so Chicago Title could not offer any amount for settlement. He said that Chicago Title was not a party to the action that would be the subject of the mediation, and that no demand for defense had ever been made. He asked Lovell whether Arkansas Riverview Development was demanding a defense and said, if Arkansas Riverview Development demanded a defense, Chicago Title would evaluate whether to provide one. He also said, "Chicago Title certainly does not want to become precipitously involved in mediation, without sufficient background information, in a way that could compromise the position you have taken on behalf of your client." He added that Chicago Title Insurance Company was willing to review and consider any claim for specified sums which Arkansas Riverview Development would submit, but it did not have enough information to determine how to proceed.

Lovell responded on February 28, 2007, stating again that Arkansas Riverview Development was asking that Chicago Title Insurance Company participate in the mediation. She said:

> We are not demanding a defense at this time because, as you recognize in your letter, our withdrawal as counsel would require a postponement of mediation. We cannot overemphasize the damaging effect such a delay would have on ARD as ARD continues to incur losses each day that this matter is not settled. I understand that you are discussing with your client whether it plans to participate in the settlement conference.

Harper replied on March 6, 2007, the day before the mediation was scheduled to begin. Harper stated that it was clear that Arkansas Riverview Development was not demanding a defense from Chicago Title Insurance Company and that Arkansas Riverview Development had failed to provide sufficient information of the damages it claimed. He added:

> . . . <u>and</u> because Chicago Title has denied coverage of your client's claim for the reasons stated in all of our prior correspondence to you, Chicago Title respectfully declines to participate in the mediation which we understanding is scheduled for March 7 and March 8. If, however, information or events develop in the mediation of which you believe Chicago Title should be made aware, please so advise us, as we will, in consultation with Chicago Title, continue to consider in good faith all information submitted to us.

Lovell responded on the same day:

> I have received your letter dated March 6, 2007. In your letter, you have correctly noted that ARD did not quantify any amounts ARD will have to pay to settle this matter with the City of Little Rock and Capitol City Hotel Limited Partnership. Of course, this is because we do not yet know how much it will cost to settle the case. This is the reason we have asked repeatedly that you attend mediation. We do note, however, that we have sent to you CCH's written offer for settlement. ARD has never received a written offer for settlement from the City.
>
> We will communicate with you by phone or email tomorrow during the mediation to keep you apprised of settlement offers received by ARD.

The mediation began on March 7, 2007. Arkansas Riverview Development and Capitol City Hotel Limited Partnership engaged in mediation that day. At 5:06 p.m., Lovell sent an email to Harper stating that Arkansas Riverview Development had just received its first offer from Capitol City Hotel Limited Partnership and stating the amount of that offer. Cassandra Baldwin, another

7

attorney for Arkansas Riverview Development, sent a second email at 5:31 p.m. explaining Arkansas Riverview Development's counteroffer. Lovell sent a third email at 5:59 p.m. describing another offer from Capitol City Hotel Limited Partnership, and Arkansas Riverview Development's counteroffer. Then, at 11:00 p.m., she sent a fourth email to Harper describing the terms of a settlement agreement reached about 9:30. She added, "The plan is to agree to this on the record tomorrow and to begin negotiating a settlement agreement immediately with a closing to occur on Tuesday, March 13. We have not yet reached a settlement with the City of Little Rock." She added, "We again ask that Chicago Title participate in mediation and pay this amount on ARD's behalf. We will begin again at 9:30 tomorrow."

On March 8, 2007, Harper sent a letter to Lovell stating:

We are in receipt of your multiple emails regarding the status of your mediation efforts in *Arkansas Riverview Development, LLC v. City of Little Rock, et al.*, U.S.D.C. (E.D. Ark.) No. 4:06CV00817 JLH. Once again, because this is a denied claim, Chicago Title will not participate in the mediation.

When you have determined your client's total damages, net of proceeds contributed by First American Title Insurance Company, the Arkansas Bar Foundation, and the City of Little Rock, please advise us of all figures.

Lovell responded on March 9, 2007, enclosing a sworn statement from Brad Canada describing losses in addition to those provided in a prior affidavit and stating:

Although we have agreed to terms of a settlement with the City of Little Rock in which no cash is being paid, ARD was required by the City to convey property to the City and to place certain restrictions on its property to benefit the City. This, of course, has value and has resulted in damage to ARD. Further, the settlement with the City will not be finalized until approved by the City's Board of Directors (which shall occur on or before April 4, 2007). ARD will continue to incur interest costs until the settlement is approved and will incur legal expenses for documenting the settlement and conveyances of property between the parties.

Harper replied in a letter dated March 14, 2007, in which he stated that Chicago Title demanded to know all of the details of the settlement agreements with Capitol City Hotel Limited Partnership, the City of Little Rock, and any other parties.  Lovell responded on March 15, 2007, enclosing a copy of the executed settlement agreement between Arkansas Riverview Development, Capitol City Hotel Limited Partnership, Metropolitan National Bank, and First American Title Insurance Company, which had been executed the previous day.  She also enclosed the terms of the settlement reached with the City of Little Rock.  She stated how much had been paid to Capitol City Hotel Limited Partnership by Arkansas Riverview Development and how much had been paid by other parties.

Lovell and Harper exchanged numerous additional letters and emails over the subsequent weeks, but it is not necessary in this opinion to describe the contents of those letters and emails.  The correspondence described in detail above suffices to show that Arkansas Riverview Development fully informed Chicago Title Insurance Company at every step of the way leading up to the settlements with Capitol City Hotel Limited Partnership and the City of Little Rock and repeatedly begged Chicago Title Insurance Company to participate in the settlement negotiations.  Arkansas Riverview Development repeatedly asked Chicago Title Insurance Company to participate in the mediation, beginning several weeks before the mediation and continuing through the mediation.  On the evening before the mediation, Arkansas Riverview Development repeated its request that Chicago Title Insurance Company attend the mediation.  When offers were made during the course of the mediation, Arkansas Riverview Development reported those offers.  At the conclusion of the first day of mediation, Arkansas Riverview Development again asked that Chicago Title Insurance Company participate in mediation and informed the title insurance company of the time when

mediation would begin the following day. Throughout this process, Chicago Title Insurance Company denied coverage and stated that it could not make an offer of settlement to Arkansas Riverview Development without more information about the claimed damages. However, not once in any of these many emails and letters did Chicago Title mention the provision in the title insurance policy stating that it would not be liable for loss or damage voluntarily assumed by Arkansas Riverview Development in settling with Capitol City Hotel Limited Partnership or the City of Little Rock without the prior written consent of Chicago Title Insurance Company.

If the insurance company in *Courson* waived its right to insist on this forfeiture provision in the policy, much more did Chicago Title Insurance Company here. In *Courson*, the lawyer for the insured wrote three letters, and the insurance company responded to none of them. The insured then negotiated a settlement on his own. Here, there was constant communication between Arkansas Riverview Development and Chicago Title Insurance Company, and Arkansas Riverview Development and Chicago Title Insurance Company gave the appearance that it was fully stating its views and positions on the issues. Chicago Title Insurance Company made it clear that it was denying coverage. Likewise, Chicago Title Insurance Company made it clear that it was refusing to participate in any settlement discussions. Chicago Title Insurance Company was fully informed that mediation was scheduled and was fully informed during the course of mediation. It had every opportunity to object and to tell Arkansas Riverview Development that Chicago Title Insurance Company's written consent would be required for any settlement pursuant to paragraph 9(c) of the Conditions and Stipulations of the title insurance policy. Despite all of the communication back and forth between the parties before, during, and after the mediation, Chicago Title Insurance Company never made such a statement. Arkansas Riverview Development was entitled to assume that if

Chicago Title had any objection to its settling the disputes with Capitol City Hotel Limited Partnership and the City of Little Rock, those objections would have been communicated before the mediation. *Compare Courson*, 475 F.2d at 1034 ("Courson was entitled to assume that if any objection to a settlement was going to be made by [the insurance company], it would have been communicated prior to the time he attempted to collect on the judgment . . . .") Following the holding of the Eighth Circuit in *Courson*, the Court holds that Chicago Title Insurance Company has waived its right to the forfeiture provided in paragraph 9(c) of the title insurance policy.

## II.

### EXCLUSION FOR DEFECTS IN TITLE THAT CAUSE NO LOSS OR DAMAGE

On the second issue, Arkansas Riverview Development argues that Chicago Title Insurance Company should not be able to defend based on the provision in the policy that excludes from coverage encumbrances or other matters resulting in no loss or damage to the insured. Arkansas Riverview Development argues that the existence of a title defect is *ipso facto* loss but then asks the Court to "declare that Chicago Title Insurance Company is liable for the value of the consideration given for the settlement with [Capitol City Hotel Limited Partnership] and the City (excepting any consideration that might have been paid for alleged violation of the height restriction . . .), and that ARD's entitlement to damages will be unaffected by any benefit obtained from processing a perpetual interest in the air rights." Document #67 at 37. Although Arkansas Riverview Development cites Joyce Palomar's treatise, *Title Insurance Law*, and several cases on what constitutes loss, it cites no case that addresses the exclusion at issue.

One authority that Arkansas Riverview Development cites is *Karl v. Commonwealth Land Title Ins. Co.*, 20 Cal. App. 4th 972, 24 Cal. Rptr. 2d 912 (1993). There, the plaintiffs acquired a

note secured by a second deed of trust on an apartment building and, in connection with the acquisition, obtained a policy of title insurance. The policy failed to list a tax lien that was senior to the plaintiffs' deed of trust. The holder of the first deed of trust learned of the tax lien and paid it before starting to foreclose. The plaintiffs then contacted the holder of the first deed of trust and asked for a reinstatement of that loan in return for the plaintiffs' paying of past due installments and repayment of the lien. The plaintiffs then contacted its title insurance company and asked that it pay the tax lien, but the insurance company refused, claiming that there was not yet any loss under the policy. The plaintiffs then foreclosed and obtained title. After making improvements to the property, the plaintiffs sold the property for more than the plaintiffs were owed. The plaintiffs then sued the title insurance company, which contended that there was no loss because the third party buyer had paid more than the plaintiffs were owed. The California Court of Appeals held "that an insured lender who receives full value in discharge of his note does not suffer a compensable 'loss' under his title policy merely because an insured-against lien reduced the equity cushion seized on the foreclosure." *Id*. at 982-83, 24 Cal. Rptr. 2d at 919. However, the court found that there were issues of fact as to whether a loss had occurred because loss must be determined as of the date of the foreclosure, not a date of the subsequent sale. *Id*.

Here, no lender is involved, and no foreclosure has taken place. The situation here is unique. What happened here is that Arkansas Riverview Development acquired a building built partly on land owned in fee simple and partly in adjacent air space leased from the City. When Arkansas Riverview Development acquired the building, it took a deed to the land but failed to obtain an assignment of the lease to the air space. Later, Arkansas Riverview Development received an assignment from the Arkansas Bar Foundation of its rights under the lease to the air space, but the

City of Little Rock asserted that it had never consented to that assignment, and that its consent was required under the terms of the air space lease. Moreover, there was a dispute with the adjoining land owner, Capitol City Hotel Limited Partnership, as to whether that entity had a right of first refusal to the air space rights. In addition to these issues, there were issues as to whether construction by Arkansas Riverview Development exceeded certain height limitations and whether the construction violated Capitol City Hotel Limited Partnership's rights in other respects. When Arkansas Riverview Development litigated with the City of Little Rock and Capitol City Hotel Limited Partnership, it litigated more than whether the City had consented to the assignment of the air space lease and whether Capitol City Hotel Limited Partnership had a right of first refusal, and when it settled with Capitol City Hotel Limited Partnership and the City of Little Rock, it acquired much more than an assignment of the air space lease and a forgiveness of the right of first refusal. To state it in a different way, there is a genuine issue of material fact as to how much, if any, of what Arkansas Riverview Development spent in litigation and in settlement was to pay for defects in the title against which Chicago Title Insurance Company had insured and how much was to pay for items outside the provisions of the title insurance policy. The Court cannot say, as a matter of law, that everything that Arkansas Riverview Development spent is recoverable under the policy. At a minimum, Arkansas Riverview Development must prove that the matter that rendered its title unmarketable caused the losses that it claims that it sustained. *Cf. Swanson v. Safeco Title Ins. Co.*, 186 Ariz. 637, 640, 925 P.2d 1354, 1357 (Ct. App. Div. 1 1995) (summary judgment was improper when there was a factual dispute as to whether the defect in the title caused any of the damage for which the plaintiffs sought recovery); *see also Willow Ridge Ltd. P'ship v. Stewart Title Guar. Co.*, 706 F. Supp. 477, 487 (S.D. Miss. 1988), *aff'd*, 866 F.2d 1419 (5th Cir. 1989) (there must be proof

that the defect in title caused the loss). Therefore, the motion for partial summary judgment on the issue of loss is denied.

## CONCLUSION

Arkansas Riverview Development's motion for summary judgment on the remaining liability issues is GRANTED IN PART and DENIED IN PART. Document #66.

IT IS SO ORDERED this 5th day of May, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE